JAY CLAYTON
United States Attorney for the
Southern District of New York
By: MARK OSMOND
Assistant United States Attorney
86 Chambers Street, Third Floor
New York, New York 10007
Telephone: (212) 637-2713
Email: mark.osmond@usdoj.gov

**THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA *ex rel.*
AIDAN FORSYTH,

Plaintiff and Relator,

-against-

HOME HEALTHCARE WORKERS OF AMERICA, INTERNATIONAL UNION OF JOURNEYMEN & ALLIED TRADES, SERVICE PROFESSIONALS UNION LOCAL 726 IUJAT, UNITED SERVICE WORKERS UNION, IUJAT NATIONAL UNION, and UNITED WELFARE FUND,

Defendants.

---

UNITED STATES OF AMERICA,

Plaintiff-Intervenor,

-against-

HOME HEALTHCARE WORKERS OF AMERICA, IUJAT, INTERNATIONAL UNION OF JOURNEYMEN & ALLIED TRADES, SERVICE PROFESSIONALS UNION LOCAL 726 IUJAT, UNITED SERVICE WORKERS UNION, IUJAT NATIONAL UNION, and UNITED WELFARE FUND - WELFARE DIVISION,

Defendants.

24 Civ. 1337 (JPO)

**COMPLAINT-IN-INTERVENTION OF THE UNITED STATES OF AMERICA**

**JURY TRIAL DEMANDED**

Plaintiff the United States of America (the "United States" or the "Government"), by its attorney, Jay Clayton, the United States Attorney for the Southern District of New York, files this Complaint-in-Intervention against International Union of Journeymen and Allied Trades ("IUJAT"), the United Service Workers Union, IUJAT National Union ("USWU"), Home Healthcare Workers of America, IUJAT ("HHWA"), Service Professionals Union Local 726 IUJAT ("Local 726"), and United Welfare Fund - Welfare Division ("UWF") (collectively "Defendants"), and alleges as follows:

**PRELIMINARY STATEMENT**

1. This is a civil fraud action brought by the United States against Defendants to recover damages and civil penalties under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729 *et seq.*, in connection with Defendants' applications for and receipt of Paycheck Protection Program ("PPP") loans for which they were ineligible. The United States also seeks to recover damages under the common law for payment by mistake of fact and unjust enrichment.

2. The PPP was a federal loan program overseen by the Small Business Administration ("SBA") to assist small businesses nationwide adversely impacted by the COVID-19 pandemic. Under the PPP, eligible businesses could obtain SBA-guaranteed loans to spend on payroll costs and other specified business expenses.

3. In April 2020, each Defendant applied for a PPP loan, which they later received. In total, Defendants received $3,316,966 in PPP loans, all of which was subsequently forgiven.

4. At the time Defendants applied for these loans, 501(c)(5) non-profit organizations like Defendants were not eligible to receive PPP funds. The only non-profits that were eligible for PPP loans at that time were 501(c)(3) and 501(c)(19) non-profit organizations. Although Congress expanded PPP eligibility in March 2021 to other categories of non-profit organizations, including

qualifying 501(c)(5) non-profits, that expansion did not apply retroactively.

5. Defendants violated the FCA by knowingly presenting and making, or causing to be presented and made, false claims and statements in connection with their submission of their PPP loan applications in April 2020. Specifically, Defendants falsely certified their eligibility for the PPP loans because they were 501(c)(5) non-profit organizations and thus ineligible for the loans at the time they applied.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over the Government's FCA claims pursuant to 31 U.S.C. § 3730(a) and 28 U.S.C. §§ 1331, 1345, and over the common law claims pursuant to 28 U.S.C. § 1345.

7. This Court may exercise personal jurisdiction over Defendants pursuant to 31 U.S.C. § 3732(a), which provides for nationwide service of process.

8. Venue is proper in this District under 31 U.S.C. § 3732(a) and 28 U.S.C. § 1391(b) because USWU, HHWA, and UWF are located in and transact business in this District.

## THE PARTIES

9. Plaintiff is the United States of America and is suing on its own behalf and on behalf of the SBA, which, among other things, administered the PPP.

10. IUJAT, USWU, HHWA, and Local 726 are related parent and subordinate labor unions, and UWF is an employee benefit plan that provides welfare benefits to members of these labor unions.

11. IUJAT is a labor union and 501(c)(5) nonprofit organization located in Danbury, Connecticut.

12. USWU is a labor union and 501(c)(5) nonprofit organization located in New

Rochelle, New York.

13. HHWA is a labor union and 501(c)(5) nonprofit organization located in New Rochelle, New York.

14. Local 726 is a labor union and 501(c)(5) nonprofit organization located in Danbury, Connecticut.

15. UWF is an employee benefit plan and 501(c)(5) nonprofit organization located in New Rochelle, New York.

## BACKGROUND

### I. The Paycheck Protection Program

16. On March 27, 2020, the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act") (Pub. L. 116-136) became law and provided emergency assistance and health care response for individuals, families, and businesses affected by the coronavirus pandemic. SBA received funding and authority through the CARES Act to modify existing loan programs and establish a new loan program to assist small businesses nationwide adversely impacted by the COVID-19 emergency.

17. The CARES Act authorized loans to eligible small businesses struggling to pay employees and other business expenses as a result of the devastating effect of the COVID-19 pandemic.

18. Section 1102 of the CARES Act temporarily permitted the SBA to guarantee 100 percent of 7(a) loans under a new program titled the "Paycheck Protection Program."[1]

---

[1] The 7(a) Loan Program is SBA's primary business loan program for providing financial assistance to small businesses. *See* SBA, *7(a) loans*, https://www.sba.gov/funding-programs/loans/7a-loans (last accessed June 28, 2026). The program "provides loan guaranties to lenders that allow them to provide financial help for small businesses with special requirements." *Id.*

19. On April 24, 2020, the Paycheck Protection Program and Health Care Enhancement Act (Pub. L. 116-139) became law and provided additional funding and authority for the PPP. On June 5, 2020, the Paycheck Protection Program Flexibility Act of 2020 (Pub. L. 116-142) became law and modified certain provisions of the PPP, including provisions relating to the maturity of PPP loans, the deferral of PPP loan payments, and the forgiveness of PPP loans.

20. Under the PPP, businesses were required to spend loan proceeds on payroll costs, rent or mortgage expenses, or other specified business expenses.

21. In accordance with the CARES Act, all third-party lenders were delegated authority to underwrite and approve the PPP loans. *See* 15 U.S.C. § 636(a)(36)(F)(ii). To obtain a PPP loan, a qualifying applicant (through its authorized representative) was required to sign and submit a PPP loan application to the lender.

22. Non-profit organizations are generally not eligible for SBA 7(a) business loans. *See* 13 C.F.R. § 120.110(a). The CARES Act made a limited exception to this broad exclusion by explicitly specifying that 501(c)(3) and 501(c)(19) non-profit organizations were eligible for PPP loans if they met certain requirements. *See* 15 U.S.C. § 636(a)(36)(A)(vii), (A)(ix), (D)(i). The CARES Act did not make any other types of non-profits eligible for PPP funds.

23. In March 2021—almost a year after Defendants applied and received their PPP loans—Congress enacted the American Rescue Plan Act of 2021, which expanded eligibility for PPP loans to other categories of non-profit organizations, including qualifying unions that were 501(c)(5) non-profit organizations. *See* 15 U.S.C. § 636(a)(36)(A)(xvii), (D)(iii)(III)(bb), (D)(ix). This expansion, however, did not apply retroactively. *See* 86 Fed. Reg. 15,083, 15,084 (Mar. 22, 2021).

24. In April 2020, the PPP loan application required applicants (through their

authorized representatives) to acknowledge the rules applicable to the PPP program and make certain affirmative certifications to be eligible to obtain PPP loans.

25. For example, applicants for PPP loans were required to certify in their PPP applications that:

a. "The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) implementing the Paycheck Protection Program"; and

b. "[T]he information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects."

26. Once an entity submitted its PPP loan application to a lender, the participating lender processed the PPP loan application. If a PPP loan application was approved by the participating lender, it thereafter funded the PPP loan using its own monies, which were 100% guaranteed by the SBA.

27. After the lender processed and approved a borrower's PPP loan application, the lender submitted to the SBA the "Lender's Application - Paycheck Protection Program Loan Guaranty," applying for a guarantee on the loan. In that application, the lender certified that the borrower had made the required certifications regarding its eligibility. Therefore, if a borrower made misrepresentations on its PPP loan application, the borrower's false certifications caused the lender to submit a loan guarantee application to the SBA that contained the borrower's false statement.

28. Congress provided for forgiveness of PPP loans. *See* 15 U.S.C. § 636m. To receive forgiveness, borrowers were required to submit signed loan forgiveness applications and documents containing the information and certifications in SBA Form 3508, 3508EZ, or a third-

party lender equivalent.

## II. The False Claims Act

29. The FCA establishes treble damages liability to the United States for an individual who, or entity that, "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval," 31 U.S.C. § 3729(a)(1)(A); or "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim," *id.* § 3729(a)(1)(B).

30. "Knowingly" is defined to include actual knowledge, reckless disregard, and deliberate ignorance. *Id.* § 3729(b)(1). No proof of specific intent to defraud is required. *Id.*

31. In addition to treble damages, the FCA also provides for assessment of a civil penalty for each violation or each false claim.

## FACTUAL ALLEGATIONS

32. Defendants falsely certified that they were eligible for PPP loans. As 501(c)(5) non-profit organizations, they were ineligible to receive PPP loans when they applied. Defendants then sought and obtained forgiveness for those loans despite having been ineligible to receive the loans in the first instance. Had the SBA known that Defendants were 501(c)(5) non-profit organizations, the SBA would not have guaranteed or forgiven Defendants' PPP loans.

33. Between April 16 and April 20, 2020, each Defendant submitted, through its authorized representative, an application for a PPP loan. Specifically:

a. IUJAT applied for and received a PPP loan for $664,257 from HSBC Bank USA, N.A. ("HSBC");

b. USWU applied for and received a PPP loan for $1,888,772 from HSBC;

c. HHWA applied for and received a PPP loan for $125,818 from Signature Bank;

d. Local 726 applied for and received a PPP loan for $178,322 from HSBC; and

e. UWF applied for and received a PPP loan for $459,797 from HSBC.

34. Each Defendant certified on its PPP loan application that it was eligible to receive the loan under the rules in effect at the time the application was submitted. Each Defendant also certified, among other things, that the information provided in its application and supporting documents was true and accurate in all material respects.

35. Each Defendant, through its authorized representative, later applied for forgiveness of its PPP loan and accrued interest, and each loan was fully forgiven.

36. Defendants were ineligible to receive the PPP loans at the time they applied because they were 501(c)(5) non-profit organizations, which were not eligible for PPP loans under the rules in effect in April 2020.

37. Defendants, at a minimum, acted with reckless disregard or deliberate ignorance of the fact that they were ineligible for the PPP funds at the time they applied.

38. In an April 2, 2020, email, an accountant advised Defendants that they did not qualify for PPP loans. A week later, that same accountant circulated a guidance document prepared by the AFL-CIO—the nation's largest federation of unions—advising that labor unions were ineligible for PPP loans.

39. In addition, a business agent of one or more of the Defendants was involved in the submission of an April 10, 2020, letter to congressional leaders urging them to "expand access to the PPP" to 501(c)(5) non-profit organizations.

40. Furthermore, before they submitted their loan applications, Defendants were aware that an SBA regional employee had advised a contact at one of Defendants' banks that only 501(c)(3) and 501(c)(19) non-profit organizations were eligible for PPP loans. Nevertheless, Defendants each decided to apply for the loans.

41. Defendants were concerned that others would find out that they had wrongly received PPP loans. Indeed, when referring to the PPP loans in June 2020, an individual who held senior leadership positions with four of the Defendants told a colleague to advise others to "keep your mouths shut and don't spread it around the labor movement."

42. As a result of Defendants' misrepresentations concerning their eligibility for PPP loans, Defendants improperly secured over $3.3 million in PPP funds that they were not entitled to receive. Furthermore, these misrepresentations caused the SBA to pay processing fees of $6,290.90 to Signature Bank and $99,300.88 to HSBC to facilitate PPP loans for ineligible entities.

## FIRST CLAIM

**Violations of the False Claims Act: Presenting False or Fraudulent Claims (31 U.S.C. § 3729(a)(1)(A))**

43. The Government incorporates by reference each of the preceding paragraphs as if fully set forth herein.

44. Through the acts set forth above, Defendants knowingly presented, or caused to be presented, false or fraudulent claims for payment or approval, in violation of the FCA, 31 U.S.C. § 3729(a)(1)(A). Specifically, Defendants requested and received PPP loans by making material misrepresentations in PPP loan applications.

45. Defendants presented or caused to be presented these claims with actual knowledge of their falsity, or in deliberate ignorance or reckless disregard of whether or not they were false.

46. By reason of these false or fraudulent claims, the Government has been damaged in a substantial amount to be determined at trial and is entitled to recover treble damages plus a civil monetary penalty for each false claim.

## SECOND CLAIM

**Violations of the False Claims Act: Use of False Statements (31 U.S.C. § 3729(a)(1)(B))**

47. The Government incorporates by reference each of the preceding paragraphs as if

fully set forth herein.

48. Through the acts set forth above, Defendants made and used, or caused to be made and used, false records and statements material to the payment of false or fraudulent claims by the SBA in violation of 31 U.S.C. § 3729(a)(1)(B). These false records and statements included the misrepresentations and false certifications by Defendants in their PPP loan applications.

49. Defendants made, used, or caused to be made and used, these false records and statements with actual knowledge of their falsity, or in deliberate ignorance or reckless disregard of whether or not they were false.

50. By reason of the false records or statements, the Government has been damaged in a substantial amount to be determined at trial and is entitled to recover treble damages plus a civil monetary penalty for each violation.

## THIRD CLAIM
## Payment by Mistake of Fact

51. The Government incorporates by reference each of the preceding paragraphs as if fully set forth herein.

52. The Government seeks relief against Defendants to recover monies paid under mistake of fact.

53. The lenders acting on behalf of the SBA and the United States made payments based on the mistaken and erroneous belief that the PPP loan applications included accurate information and that Defendants were eligible for the PPP loans. The PPP loans were also forgiven based on the mistaken and erroneous belief that Defendants were eligible for the loans.

54. By reason of the foregoing, the Government has sustained damages in a substantial amount to be determined at trial.

**FOURTH CLAIM**
**Unjust Enrichment**

55. The Government incorporates by reference each of the preceding paragraphs as if fully set forth herein.

56. Through the acts set forth above, Defendants received PPP funds to which they were not entitled and therefore were unjustly enriched. The circumstances are such that, in equity and good conscience, Defendants should not retain those payments, the amount of which is to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, the Government respectfully requests that judgment be entered in its favor against Defendants as follows:

(a) On the First and Second Claims (FCA violations), for a sum equal to treble damages and civil penalties to the maximum amount allowed by law;

(b) On the Third and Fourth Claims (Payment by Mistake of Fact and Unjust Enrichment), a sum equal to the damages to the extent allowed by law; and

(c) Granting the Government costs and such further relief as the Court may deem proper.

Dated: New York, New York
July 24, 2026

JAY CLAYTON
United States Attorney for the
Southern District of New York

By: */s/ Mark Osmond*
MARK OSMOND
Assistant United States Attorney
86 Chambers Street, Third Floor
New York, New York 10007
Tel: (212) 637-2713